UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA,<br><br>        Plaintiff,<br><br>    v.<br><br>SHERMAN, et al.,<br><br>        Defendants. | Case No.: 1:18-cv-00797-DAD-JLT (PC)<br><br>FINDINGS AND RECOMMENDATION TO DISMISS ACTION<br><br>(Doc. 22)<br><br>21-DAY DEADLINE |

Mr. Quezada alleges that the defendants failed to provide him adequate medical care and accommodation and retaliated against him because he engaged in protected conduct. (Doc. 22). In his original complaint and first amended complaint, (Docs. 1, 15), the Court found that Plaintiff failed to state a cognizable claim for relief. (Docs. 13, 19.) The Court provided Plaintiff with the pleading requirements and legal standards for his alleged claims and granted him leave to amend. (*Id.*) Despite these opportunities, Plaintiff still fails to state a cognizable claim in his second amended complaint ("SAC"). The Court thus finds that Plaintiff is unable to cure the deficiencies in his pleading, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012), and recommends that this action be **DISMISSED**.

I. **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks and citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and

citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

To state a claim for relief, Plaintiff must link each named defendant with some affirmative act or omission that caused a violation of Plaintiff's federal rights. Plaintiff must clearly identify which defendant he believes is responsible for each violation of his rights and set forth the supporting factual basis for these claims. His complaint must put each defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

## III. DISCUSSION

### A. Plaintiff's Allegations

In its Second Screening Order, the Court informed Plaintiff that his first amended complaint ("FAC") was excessively long and replete with legal jargon and conclusory phrases, and the Court ordered Plaintiff to limit his SAC to 20 pages or less. (Doc. 19 at 1, 4, 5, 14.) Despite this order, Plaintiff's SAC is 27 pages in length, not including the 269 pages of exhibits, and is again filled with conclusory statements, legal jargon, and repetition. From this SAC, the Court gleans the following relevant factual allegations:

On April 26, 2017, Plaintiff was transferred to the Substance Abuse Treatment Facility in Corcoran, California. (Doc. 22 at 7.) Upon arrival, he informed SATF staff that he was suffering

from degenerative disk disease ("DDD") and spinal stenosis that caused severe pain and limited his ability to stand and walk. (*Id.*) Correctional officers informed Plaintiff that the "SOMS" did not document his medical condition, and thus he must produce medical "chronos" or report his condition to medical staff. (*Id.* at 7-8.)

On May 11, 2017, Defendant-Dr. Akabike evaluated Plaintiff and declined to update his medical file or provide Plaintiff "adequate pain medication." (*Id.* at 9.) On June 4, 2017, Plaintiff filed a reasonable accommodation request that he not be assigned to dining duties. (*Id.*) Plaintiff asserts that his request was denied because Dr. Akabike refused to update his "misinformed medical file." (*Id.*)

On June 28, 2017, Plaintiff fell twice while walking down the stairs from his cell. (*Id.* at 10.) Plaintiff states that he fell because his right leg gave out due to his DDD and stenosis. (*Id.*) After his fall, SATF staff took Plaintiff to "CIC" to treat his injury and pain. (*Id.*) Plaintiff requested a cane from Dr. Metts, who replied that only Dr. Akabike could grant this request. (*Id.*)

Plaintiff's first fall occurred during "2nd watch." (*Id.* at 13.) During "3rd watch," Plaintiff's cellmate and "care taker," Cruz, informed Defendant Harris that Plaintiff had fallen that morning while he was walking down from "top tier." (*Id.*) Given Plaintiff's disability, Cruz requested that both he and Plaintiff be moved to a "lower bunk." (*Id.*) Instead, Defendants Harris and Ceja decided to move Cruz to a lower bunk, but not Plaintiff. (*Id.* at 13, 17.) Defendants Harris and Ceja then instructed Cruz to "roll up his property" so that he could move to the lower bunk. (*Id.* at 13, 17.) The defendants then conducted a search of Plaintiff's pod. (*Id.* at 17.)

During the search, Defendant Ceja ordered Plaintiff to walk down the stairs from his pod. (*Id.*) Plaintiff informed Ceja that he could not walk down due to his condition; Ceja responded by telling Plaintiff that he would be sanctioned if he did not. (*Id.*) Plaintiff "under duress went down the stairs," and his right leg gave out again and he fell the second time. (*Id.*) Defendant Ceja then walked over to the edge of the top tier to look down at Plaintiff and stated that he was "faking," and he instructed other correctional officers to continue their search of the top-tier pod. (*Id.*) When Defendant Harris entered the room, he activated the alarm for medical emergency. (*Id.* at 18.) Plaintiff was again transported to CIC and treated for his injuries. (*Id.*)

1    Plaintiff alleges that Defendant Harris issued a rules violation report ("RVR") against him to "punish[] plaintiff for seeking medical attention after plaintiff was forced under duress of being punished if plaintiff did not go down the top tier stairs." (*Id.* at 14.) In the RVR, Defendant Harris "falsely asserted" that he "had advised I/M Quezada that [he] had no available bunks for him at the moment." (*Id.*) During the RVR hearing, Defendant Ceja testified that he had been "[w]arned by 2nd watch that plaintiff was faking" his condition and that this was the reason that he did activate the medical alarm. (*Id.* at 18.)

After the falls, Dr. Akabike still refused to update Plaintiff's medical file to reflect his DDD and stenosis, which prevented him from being housed on a lower bunk or being reassigned from dining duties. (*Id.* at 11, 12.) Plaintiff asserts that Dr. Akabike continued to refuse to treat his medical condition, provide "proper pain medications," or provide a mobility device such as a cane or wheelchair. (*Id.* at 10, 12.)

Plaintiff alleges that Defendants "harbored animus" against him and were "systematically" punishing him for "maintaining several federal suits … against CDCR agents, for filing numerous CNs', 602s, 22-forms, and/or having plaintiff's loved one[s] file complaints on behalf of plaintiff." (*Id.* at 25.) Plaintiff contends that Defendants Harris and Ceja filed the "false RVR," denied Plaintiff's request to move to a lower bunk and denied Plaintiff medical attention after his second fall because he engaged in these protected activities. (*Id.* at 26.) He states that Defendant-Warden Sherman denied Plaintiff's appeal and failed to correct his subordinates' constitutional violations due to this same retaliatory motive. (*Id.* at 25.)

On July 11, 2017, Plaintiff underwent an MRI scan, from which Dr. Tung concluded that Plaintiff required surgery. (*Id.* at 18-19; *see also* Doc. 15 at 17.) The "Utilization Management Committee," however, denied the request for surgery. (Doc. 22 at 151.) On July 28, 2017, Plaintiff was transferred to Richard J. Donovan Correctional Facility in San Diego. (*Id.*) On September 29, 2017, in response to Plaintiff's health care appeal, Correctional Health Care Services granted Plaintiff's requests for a cane, a back brace, and "accommodations for ground floor-no stairs and lower/bottom bunk." (*Id.* at 151, 154.)

///

**B. Claims for Relief**

    1. <u>Deliberate Indifference to Medical Needs</u>

"Prison officials violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care…." *Estelle*, 429 U.S. at 104-05. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotation marks and citations omitted). "A prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'" *Id.* at 1082 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The test for deliberate indifference to medical need is thus two-pronged and has objective and subjective components. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). To establish such a claim, a prisoner must first "show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

As to the first, objective prong, "[i]ndications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

As to the second, subjective prong, deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation marks and citation omitted). Deliberate indifference exists where a prison official "knows that

6

[an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing, "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation omitted). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that he suffers from degenerative disk disease and spinal stenosis, which affect his ability to walk and stand and cause significant pain. (Doc. 22 at 7.) The Court finds that this satisfies the objective prong, since it is a condition that a reasonable patient would find worthy of treatment, affects Plaintiff's daily activities, and causes substantial pain. *See Colwell*, 763 F.3d at 1066.

Plaintiff's allegations do not satisfy the subjective prong. With respect to Dr. Akabike, Plaintiff alleges that the doctor misdiagnosed him and failed to update his medical chart to reflect his DDD and stenosis. (Doc. 22 at 9-12.) However, a misdiagnosis does not amount to deliberate indifference. *See Estelle*, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim … under the Eighth Amendment"). Furthermore, Plaintiff received an MRI; and, based on its results, Dr. Tung prescribed surgery. (Doc. 22 at 18-19.) Plaintiff does not state whether Dr. Akabike ordered the MRI or referred him to Dr. Tung; but these facts reveal that he continued to receive treatment. Plaintiff thus fails to show that Dr. Akabike was deliberately indifferent to his medical needs.

With respect to Defendant Ceja, Plaintiff alleges that the correctional officer failed to

| | |
|---|---|
| 1 | move him to a lower bunk and forced him to walk down stairs after Cruz informed the officer that |
| 2 | Plaintiff had fallen. (Doc. 22 at 13, 17.) When Plaintiff fell a second time, Ceja waived him off |
| 3 | and did not alert medical personnel. (*Id.* at 17.) Defendant Harris activated the medical alarm |
| 4 | when he arrived. (*Id.*) Ceja testified during an RVR hearing that he had been "[w]arned by 2nd |
| 5 | watch that plaintiff was faking" and that this was the reason that he did not activate the medical |
| 6 | alarm. (*Id.* at 18.) This corresponds with Plaintiff's allegation that Ceja told Plaintiff he was |
| 7 | faking immediately after he fell. (*Id.* at 17.) |

Although potentially negligent, Ceja's actions do not amount to deliberate indifference; not only must Ceja have been aware of facts from which he could infer that Plaintiff had a serious medical condition that would cause him to fall, he must have also drawn that inference. *See Farmer*, 511 U.S. at 837. Plaintiff does not show that Ceja drew this inference, particularly when he kept stating that Plaintiff was "faking." Moreover, at this point, Plaintiff's medical file did not reflect diagnosis of DDD or stenosis. (Doc. 22 at 9-12.) *See Maciel v. Rowland*, 145 F.3d 1339 (9th Cir. 1998) (prison guards not deliberately indifferent when they relied on doctors' recommendations). Plaintiff thus fails to show that Defendant Ceja was deliberately indifferent to his medical needs.

With respect to Defendant Harris, Plaintiff alleges that he also failed to move him to a lower bunk after Cruz informed him that Plaintiff had fallen. (Doc. 22 at 13, 17.) For the reasons given above, this does not amount to deliberate indifference. Plaintiff also alleges that Harris falsified an RVR when he asserted that he "advised I/M Quezada that [he] had no available bunks for him." (*Id.* at 14.) This allegation is irrelevant to the claim of deliberate indifference to medical needs; it does not show that Harris knew of Plaintiff's condition and acted indifferently thereto.

Lastly, with respect to Defendant-Warden Sherman, Plaintiff alleges that he is liable because he denied Plaintiff's administrative appeals. (*Id.* at 20.) Such allegation does nothing to show Warden Sherman's state of mind or that he was deliberately indifferent.

2. <u>Retaliation</u>

A claim for retaliation has five elements. *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). First, a plaintiff must allege that he engaged in protected activity. *Id.* For example, filing

8

an inmate grievance is protected, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as is the right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). Second, the plaintiff must show that the defendant took adverse action against him. *Watison*, 668 F.3d at 1114 (citation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* In other words, the plaintiff must claim the defendant subjected him to an adverse action *because of* his engagement in protected activity. *Rhodes*, 408 F.3d at 567. "Fourth, the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future [protected] activities." *Watison*, 668 F.3d at 1114 (internal quotation marks and citation omitted). "Fifth, the plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution….'" *Id.* (quoting *Rizzo*, 778 F.2d at 532).

Plaintiff has filed "several federal suits against CDCR agents," among other actions. (Doc. 22 at 25.) In addition, Plaintiff's relatives have filed complaints against CDCR on Plaintiff's behalf. (*Id.*) Plaintiff alleges that Defendants Harris and Ceja filed a false RVR, failed to move him to a lower bunk, and denied him medical attention in retaliation. (*Id.* at 26.) Plaintiff states that Defendant Sherman denied his administrative grievances or appeals for the same reason. (*Id.* at 25.)

Although Plaintiff engaged in protected conduct, he does not state a cognizable retaliation claim because he fails to show a causal connection between the protected conduct and Defendants' actions. For example, Plaintiff does not allege that Defendants were aware of his prior lawsuits; and, he does not show that Defendants denied his request to move to a lower bunk, failed to provide him medical attention, or rejected his appeals *because of* his lawsuits.

Plaintiff also states that Defendants Ceja and Harris issued the RVR to punish him for requesting to move to a lower bunk and seeking medical attention after he fell. (*Id.* at 26.) Aside from this conclusion, Plaintiff provides no factual bases for finding that Defendants issued the RVR in retaliation for his requests for housing accommodation or medical assistance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

9

## IV. CONCLUSION AND RECOMMENDATION

Though Plaintiff has been provided multiple opportunities to amend his pleading, Plaintiff's second amended complaint fails to state a claim on which relief can be granted. Given the prior opportunities to amend, the Court finds that further amendment would be futile. Accordingly, the Court **RECOMMENDS** that this action be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __November 18, 2019__       /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE