UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA,<br><br>  Plaintiff,<br><br>  v.<br><br>S. SHERMAN, et al.,<br><br>  Defendants. | Case No. 1:18-cv-00797-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANT**<br><br>(Doc. 29)<br><br>21-DAY DEADLINE |

Plaintiff alleges deliberate indifference to his health and safety, conspiracy, retaliation, denial of access to the courts, and violations of the Americans with Disabilities Act. (*See* Doc. 29.) The Court finds that Plaintiff's third amended complaint states cognizable claims of deliberate indifference against Defendants Akabike, Ceja, and Harris, but his conspiracy claims, ADA claims, and First Amendment claims against Defendant Sherman are not cognizable. Given that Plaintiff has received three opportunities to amend (*see* Docs. 13, 19, 23, 28), the Court finds that further amendment would be futile. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012). The Court therefore recommends that Defendant Sherman and Plaintiff's conspiracy, ADA, and First Amendment claims be dismissed.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1  The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,
2  fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant
3  who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if
4  it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal
5  theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**II.    PLEADING REQUIREMENTS**

   **A. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks and citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to

state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Federal Rules of Civil Procedure 18 and 20

Federal Rule of Civil Procedure 18(a) allows a party asserting a claim for relief to "join, as independent or alternative claims, as many claims as it has against an opposing party." However, a plaintiff may not join unrelated claims against multiple defendants in a single action. *See* Fed. R. Civ. P. 20(a)(2); *see also Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) ("unrelated claims against different defendants belong in separate lawsuits"). A plaintiff may bring claims against more than one defendant only if (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2); *see Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).

### III. SUMMARY OF FACTUAL ALLEGATIONS[1]

Plaintiff suffers from degenerative disc disease and stenosis. (Doc. 29 at 7-8.) His condition causes him back pain and affects his "ability to walk, stand, and … sit down for prolong[ed] periods." (*Id.* at 8.)

///

---

[1] For screening purposes, the Court accepts Plaintiff's factual allegations as true. *See Iqbal*, 556 U.S. at 678

3

While incarcerated at Substance Abuse Treatment Facility and State Prison, Plaintiff repeatedly requested that his medical file be updated to reflect his medical condition, but Dr. Akabike refused. (*Id.* at 7-8.) Because of this, prison officials assigned him to a dining hall job and "top tier" housing, which were inappropriate for his condition. (*Id.*) Plaintiff alerted Dr. Akabike that he was unable to perform his work duties because of his disability. (*Id.* at 9.) After evaluating Plaintiff, Dr. Akabike refused to update Plaintiff's medical file to reflect his disability and denied him adequate pain medication and treatment. (*Id.*)

On June 28, 2017, Plaintiff fell twice while walking down the stairs from his top-tier cell. (*Id.* at 10.) Plaintiff fell because of his medical condition, which caused his "right leg to give out." (*Id.*)

After the first fall, Plaintiff's cellmate, whom Plaintiff considered his "caretaker," informed Correctional Officer Harris of the accident and requested that both he and Plaintiff be moved to a lower-tier bunk. (*Id.* at 14.) Harris and Correctional Officer Ceja "had firsthand knowledge of plaintiff's severe medical conditions and disabilities" because they "observed plaintiff struggling to walk" every day, and they "witnessed [him] being assisted" by his cellmate. (*Id.*) After Plaintiff's cellmate requested that he and Plaintiff be moved to a lower bunk, Harris instructed the cellmate, who is able bodied, to move to a lower bunk, but forced Plaintiff to remain at his top-tier bunk. (*Id.* at 14-15.)

Officers Harris and Ceja then "forced plaintiff" "to go down the stairs [a second time] or else be punished." (*Id.* at 15, 17.) While walking down the stairs, Plaintiff fell the second time, causing him to be "severely injured." (*Id.* at 17.) Plaintiff yelled for medical assistance, but Ceja "walked over to the edge of the top tier and looked at plaintiff on the floor in serious pain, and … stated … that plaintiff was 'faking' then waved off plaintiff and instructed the other [correctional officers] … to continue searching" his pod. (*Id.*) After other inmates began yelling, "man down," Harris "ran into the dayroom and saw plaintiff on the floor in serious pain, and he activated his alarm for a medical emergency response." (*Id.*) Plaintiff was transferred to a hospital and treated for his injuries. Dr. Tung recommended surgery. (*Id.* at 18.)

///

After the incidents, Harris "falsified" a rules violation report against Plaintiff. (*Id.* at 15.) In the report, Harris states that he "advised plaintiff that he had no available bunks for [him]," despite the fact that he had just moved his cellmate, who is able bodied, to one such bunk. (*Id.*)

After the falls, Dr. Akabike again refused to update Plaintiff's medical file and to adequately treat his pain, and she declined to provide him mobility accommodations such as a cane or wheelchair. (*Id.* at 10-11.)

Plaintiff was eventually transferred to R.J. Donavan Correctional Facility, where he was "immediately provided" "proper pain treatment … and … immediately provided with an ADA-appliance" for his disability. (*Id.* at 11-12.)

Plaintiff also alleges that Warden Sherman violated his First Amendment rights. Upon his arrival at Substance Abuse Treatment Facility in April 2017, Plaintiff "was denied access to [his] legal files that were being held in stor[age] by R&R-Staff." (*Id.* at 24.) Plaintiff sent a letter to Sherman notifying him of the lack of access to his files as well as the "inadequate library access." (*Id.*) Plaintiff also filed grievances, and his family members filed additional complaints on his behalf. (*Id.*) Plaintiff also sent a letter to the secretary of the California Department of Corrections and Rehabilitation. (*Id.*) Nevertheless, Sherman did not "terminate" the inappropriate conduct by his subordinates, though "he had the authority to correct … and/or prevent future constitutional deprivations." (*Id.* at 25.)

**IV.   DISCUSSION**

   **A. Causes of Action**

Plaintiff raises claims under the Eighth Amendment and the Americans with Disabilities Act against Defendants Akabike, Ceja, and Harris. (*See* Doc. 24 at 6-22.) He also raises claims under the First Amendment against Defendant Sherman. (*See id.* at 6, 23-26.). The Court construes Plaintiff's First Amendment claims as retaliation and access-to-courts claims.

   1. Eighth Amendment: Deliberate Indifference to Serious Medical Needs

"Prison officials violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is

manifested by … doctors in their response to the prisoner's needs or by … guards in intentionally denying or delaying access to medical care….” *Estelle*, 429 U.S. at 104-05. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotation marks and citations omitted). "A prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'" *Id.* at 1082 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The test for deliberate indifference is thus two-pronged and has objective and subjective components. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). To establish such a claim, a prisoner must first "show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

As to the first, objective prong, "[i]ndications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

As to the second, subjective prong, deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation marks and citation omitted). Deliberate indifference exists where a prison official "knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing, "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation omitted). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

6

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that he suffers from degenerative disc disease and stenosis, which causes him back pain and affects his ability to walk, stand, and sit for prolonged periods. (Doc. 29 at 7-8.) Such allegation satisfies the first, objective prong of a deliberate indifference claim.

The Court finds that Plaintiff's allegations satisfy the second, subjective prong with respect to Dr. Akabike. Plaintiff alleges the doctor, after evaluating Plaintiff, refused to provide him proper pain medication and mobility accommodations and to update his medical chart to reflect his condition. (*Id.* at 7-9.) Plaintiff also alleges that, after his condition caused him to fall, the doctor continued to deny him proper treatment and still refused to update his chart. (*Id.* at 10-11.)

As soon as Plaintiff was transferred to a different prison, prison officials allegedly provided him proper treatment and accommodations. (*Id.* at 11-12.) Although a misdiagnosis or a mere difference in medical opinion does not, by itself, establish deliberate indifference, *Estelle*, 429 U.S. at 106, *Toguchi*, 391 F.3d at 1059-60, this allegation supports Plaintiff's claim that Dr. Akabike was deliberately indifference to his medical needs. When taken together, Plaintiff's allegations state a deliberate indifference claim that is plausible on its face.

Plaintiff also states a cognizable deliberate indifference claim against Correctional Officer Ceja for his alleged refusal to call for medical assistance when Plaintiff fell the second time. Although the officer stated that he believed Plaintiff was "faking" (Doc. 29 at 17), Plaintiff alleges that Ceja knew of his condition because Ceja observed him struggling to walk and being assisted by his cellmate daily (*id.* at 14).

2. Eighth Amendment: Deliberate Indifference to Safety

"It is undisputed that the treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the [Cruel and Unusual Punishments Clause of the] Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of … inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).

As explained in the previous section, to establish a claim of deliberate indifference, "[p]laintiffs must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). First, plaintiffs must show that their alleged deprivation is "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). To be sufficiently serious, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, plaintiffs must show that the prison official was deliberately indifferent to their health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Plaintiff states cognizable deliberate indifference claims against Correctional Officers Ceja and Harris for their alleged refusal to move Plaintiff to a lower bunk, and forcing him to walk stairs, after he fell the first time, which allegedly caused him to fall a second time. Plaintiff alleges the officers knew about his disability because they regularly saw him struggling to walk and being assisted by his cellmate. (Doc. 29 at 14.) Plaintiff also alleges that, after he fell the first time, his cellmate requested that he and Plaintiff be moved to a lower bunk; but the officers, for an unknown reason, moved only the cellmate. (*Id.* at 14-15.)

The Court notes that Plaintiff's allegation that Dr. Akabike never updated his medical file to reflect his disability runs counter to his claim that the officers were deliberately indifferent by denying him a lower bunk or making him walk stairs. That is, if prison guards rely on a doctor's diagnosis in making a housing assignment, such reliance is evidence that the officers did not act unreasonably. *See Maciel v. Rowland*, 145 F.3d 1339 (9th Cir. 1998). However, considering Plaintiff's allegation that the officers personally witnessed his inability to walk properly, the

Court finds that Plaintiff's claims are sufficient to survive screening.

        3.   <u>Conspiracy to violate Plaintiff's Eighth Amendment Rights</u>

Plaintiff alleges that Defendants Ceja and Harris "conspired … to deny [his] ADA-Accommodations and acted culpably indifferent towards [his] serious medical needs and disabilities that required [him] to be moved to a … lower bunk to prevent … further falls and injuries." (Doc. 29 at 14.) He further alleges that Ceja and Harris "conspired to move plaintiff's care taker [sic] … to a … lower bunk, while remaining plaintiff on the top tier." (*Id.* at 15.) It is unclear whether Plaintiff is using the term "conspired" loosely or instead attempting to raise a conspiracy claim under section 1983. If the latter, such claim is not cognizable.

To state a conspiracy claim under section 1983, a plaintiff "'must show an agreement or "meeting of the minds" to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted), and an "'actual deprivation of … constitutional rights result[ing] from the alleged conspiracy.'" *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (internal quotation marks and citation omitted).

Plaintiff does not provide adequate facts to show that Ceja and Harris engaged in a conspiracy to violate his Eighth Amendment rights. Plaintiff's allegations that the defendants "conspired" are conclusory and speculative. Plaintiff does not allege any facts "showing or suggesting an agreement or a meeting of the minds to violate plaintiff's constitutional rights." *Avery v. Virga*, No. 2:11-cv-01945-DAD, 2013 WL 4523517, at *4 (E.D. Cal. 2013). His allegations that the defendants were deliberately indifferent by failing to move him to a lower bunk, and moving his cellmate instead, are insufficient to show that they shared a common objective of denying his Eight Amendment rights and acted in furtherance thereof.

        4.   <u>Americans with Disabilities Act</u>

The Americans with Disabilities Act provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The Supreme Court has held that "public entity" includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).

Plaintiff does not state a viable claim under the ADA. He alleges that Dr. Akabike and Officers Ceja and Harris denied him adequate accommodations (Doc. 29 at 9, 21-22), but he does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability, or that he was subjected to any type of discrimination by reason of his disability.

Additionally, Plaintiff sues the defendants in their individual capacities. (Doc. 29 at 6). The Ninth Circuit has explicitly held "that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Therefore, Plaintiff's ADA claims are not cognizable.

### 5. First Amendment: Denial of Access to the Courts

Inmates have a fundamental, constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346, 350 (1996). To establish an access-to-courts claim, a prisoner must allege an "actual injury," i.e., he must show that an official frustrated or hindered efforts to pursue a legal claim. *Id.* at 351.

Access-to-courts claims generally fall into two categories: (1) claims arising from an official frustrating a plaintiff from preparing and filing a lawsuit in the present, i.e., a forward-looking claim, and (2) claims arising from an official causing the loss of a meritorious claim that can no longer be pursued, i.e., a backward-looking claim. *Christopher v. Harbury,* 536 U.S. 403, 412-15 (2002). When a prisoner asserts a backward-looking claim, "he must show: 1) the loss of a 'non-frivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and

3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir.2007) (citing *Christopher*, 536 U.S. at 413-414), *overruled on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009).

Plaintiff does not state a cognizable access-to-courts claim. He alleges that R&R staff "refused to provide [him] access to [his] legal files," and that prison officials provided him "inadequate library access … to … prosecute … active civil cases." (Doc. 29 at 24.) Because Plaintiff's allegations stem from incidents in 2017 (*id.*), the Court assumes that Plaintiff is attempting to state a "backwards-looking" claim. Plaintiff, though, does not allege any actual injury, i.e., he does not show that he lost any underlying claim, let alone one that is arguable or non-frivolous. As the Supreme Court has held, prisoners do not have a "freestanding right to a law library." *Lewis*, 518 U.S. 351. To state an access-to-courts claim, Plaintiff must show that he suffered an actual injury. He fails to do so.

Additionally, Plaintiff fails to link Warden Sherman to his claim. To establish supervisory liability, Plaintiff must show that "there exists either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Plaintiff does not allege facts that show either Sherman's personal involvement or a causal connection between Sherman's actions and the alleged denial of his access to the courts.

Plaintiff alleges that he mailed letters, filed grievances, and had family members submit complaints on his behalf, which he contends placed the warden on "constructive" or "legal" notice of the issues regarding his legal mail and the law library. (Doc. 29 at 24.) Plaintiff further alleges that, despite such notice, the warden "refused to act" to correct the alleged constitutional deprivations. (*Id.* at 24-25.) Plaintiff's allegations are insufficient to show that the warden personally participated in or proximately caused any alleged constitutional violation.

Plaintiff also alleges that Warden Sherman "was personally aware of the series of retaliatory acts by others that he was responsible for, yet [he] refused to terminate these … retaliatory acts …, which [he] … knew would cause plaintiff constitutional injury." (*Id.* at 25.) He alleges that Sherman "failed to train, supervise, or control [his] subordinates …. [and] acted with

acquiescence to the constitutional deprivations." (*Id.*) These allegations are conclusory and without factual support. The "court is not bound to accept as true a legal conclusion couched as a factual allegation." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (internal quotation marks and citations omitted). Plaintiff provides no actual facts to show that Sherman was aware of any constitutional violations or failed to properly train or supervise his subordinates. His claim that he placed Sherman on "constructive notice" by mailing letters and filing grievances is insufficient to show that he placed Sherman on *actual* notice of any constitutional violations, or that Sherman acquiesced to any such violations. Plaintiff thus fails to state a plausible claim for relief against Sherman.

### 6. First Amendment: Retaliation

A claim of retaliation has five elements. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). First, a plaintiff must allege that he engaged in protected activity. *Id.* For example, filing an inmate grievance is protected, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as is the right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). Second, the plaintiff must show that the defendant took adverse action against him. *Watison*, 668 F.3d at 1114 (citation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* In other words, the plaintiff must claim the defendant subjected him to an adverse action because of his engagement in protected activity. *Rhodes*, 408 F.3d at 567. "Fourth, the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future [protected] activities." *Watison*, 668 F.3d at 1114 (internal quotation marks and citation omitted). "Fifth, the plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution….'" *Id.* (quoting *Rizzo*, 778 F.2d at 532).

Plaintiff does not state a cognizable retaliation claim against Warden Sherman. As an initial matter, Plaintiff does not provide facts showing Sherman took any adverse action against him. To the extent that Plaintiff contends that the denial of his administrative appeals are adverse actions (*see* Doc. 29 at 25), such denials, without more, are insufficient to state a cognizable claim, since "inmates lack a … constitutional entitlement to a specific prison grievance

procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Even assuming Sherman did take adverse action against him, Plaintiff does not provide facts that show Sherman acted *because of* his engagement in any protected activity. Plaintiff states that "Sherman harbored animus against" him because he filed grievances and had his family members file complaints on his behalf. (Doc. 29 at 24-25.) Such allegations, like the allegations described in the previous subsection, are conclusory and without factual support. Plaintiff provides no facts to show that Sherman harbored any animus against him, or that he took any actions or failed to act because Plaintiff filed grievances and complaints. "Because the[se] conclusory allegations … are speculative and do not state a plausible claim for relief," *Keates*, 883 F.3d at 1243, the claims against Sherman should be dismissed.

### B.  Misjoinder of Defendant

As explained in section II.C, *supra*, Plaintiff may not join unrelated claims against multiple defendants in a single action. *See* Fed. R. Civ. P. 20(a)(2). A plaintiff may bring claims against more than one defendant only if the claims arise out of the same occurrence or series of occurrences. *See* Fed. R. Civ. P. 20(a)(2); *Coughlin*, 130 F.3d at 1351. Plaintiff's claims against Sherman do not arise out of the same occurrence or series of occurrences as his claims against the remaining defendants. Plaintiff's claims against Akabike, Ceja, and Harris are for alleged inadequate treatment and accommodations for his medical condition and disability. (*See* Doc. 29 at 7-22.) Plaintiff's claims against Sherman, on the other hand, are for alleged interference with his legal mail and access to the law library. (*Id.* at 23, 24.) These claims are unrelated for purposes of Rule 20 and cannot be brought in the same suit.

As explained above, Plaintiff does not state any cognizable claims against Defendant Sherman. The misjoinder of Sherman provides alternative grounds to dismiss him from this lawsuit. Fed. R. Civ. P. 21 ("the court may at any time, on just terms, add or drop a party").

### V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, Plaintiff's third amended complaint (Doc. 29) states cognizable claims of deliberate indifference against Defendants Akabike, Ceja, and Harris, but his remaining claims are not cognizable. Given Plaintiff's three opportunities to amend, the Court

finds that further amendment would be futile. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012). Accordingly, the Court **RECOMMENDS** that the claims in Plaintiff's third amended complaint be **DISMISSED**, *except* for the claims of deliberate indifference against Defendants Akabike, Ceja, and Harris. The Court further **RECOMMENDS** that Defendant Sherman be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 20, 2020**                                   **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE