1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11    ALVARO QUEZADA,                        Case No. 1:18-cv-00797-DAD-JLT (PC)

12                    Plaintiff,              **FINDINGS AND RECOMMENDATIONS
                                              TO GRANT IN PART AND DENY IN PART
13           v.                               DEFENDANTS' MOTION TO DISMISS**

14    AKABIKE, et al.,                        (Doc. 41)

15                    Defendants.             21-DAY DEADLINE

16

17          Before the Court is Defendants' motion to dismiss Plaintiff's third amended complaint.

18   (Doc. 41.) For the reasons set forth below, the Court recommends that the motion be granted in

19   part and denied in part.

20   **I.     LEGAL STANDARDS**

21          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

22   sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a Rule

23   12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the

24   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

25   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal

26   quotation marks and citations omitted). Dismissal is proper if there is a "lack of a cognizable legal

27   theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

28   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

1   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

2   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court

4   "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

5   most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

6   (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of *pro se* prisoners

7   liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

8   2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's

9   factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).

10   **II.     SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS**

11   At the times relevant to this case, Plaintiff was incarcerated at Substance Abuse Treatment

12   Facility and State Prison, Corcoran (SATF). (*See generally* Doc. 29.) While at SATF, Plaintiff

13   suffered from degenerative disc disease and stenosis, which caused him back pain and affected

14   his "ability to walk, stand, and . . . sit down for prolong[ed] periods" of time. (*Id.* at 7-8.)

15   In 2017, over the span of several months, Plaintiff repeatedly requested that his medical

16   file be updated to reflect his medical condition and disability; but Dr. Akabike refused. (*Id.*) As a

17   result, prison officials assigned Plaintiff to a dining hall job and "top-tier" housing, both of which

18   were inappropriate for his condition. (*Id.*) Plaintiff alerted Dr. Akabike that he was unable to

19   perform his work duties because of his disability. (*Id.* at 9.) After evaluating Plaintiff, Dr.

20   Akabike refused to update Plaintiff's medical file to reflect his disability, and she denied him

21   adequate pain medication and treatment. (*Id.*)

22   On June 28, 2017, Plaintiff fell twice while walking down the stairs from his top-tier cell.

23   (*Id.* at 10.) Plaintiff fell because of his medical condition, which caused his "right leg to give out."

24   (*Id.*) After the falls, Dr. Akabike continued to refuse to update Plaintiff's medical file and to

25   adequately treat his pain, and she declined to provide him mobility accommodations such as a

26   cane or wheelchair. (*Id.* at 10-11.)

27   After Plaintiff fell the first time, Plaintiff's cellmate (whom Plaintiff considered to be his

28   "caretaker") informed Correctional Officer Harris of the accident and requested that both he and

2

1    Plaintiff be moved to a lower-tier bunk. (*Id.* at 14.) Harris and Correctional Officer Ceja "had

2    firsthand knowledge of plaintiff's severe medical conditions and disabilities" because they

3    "observed plaintiff struggling to walk" every day, and they "witnessed [him] being assisted" by

4    his cellmate. (*Id.*) After Plaintiff's cellmate requested that he and Plaintiff be moved to a lower-

5    tier cell, Harris and Ceja ordered the cellmate, who is able bodied, to move to a lower cell, but

6    forced Plaintiff to remain at his top-tier cell. (*Id.* at 14-16.)

7         Officers Harris and Ceja then "forced plaintiff" "to go down the stairs or else be

8    punished." (*Id.* at 15, 17.) While walking down the stairs, Plaintiff fell the second time, causing

9    him to be "severely injured." (*Id.* at 17.) Plaintiff yelled for medical assistance, but Ceja "walked

10   over to the edge of the top tier and looked at plaintiff on the floor in serious pain, . . . stated . . .

11   that plaintiff was 'faking' then waved off plaintiff and instructed the other [correctional officers]

12   . . . to continue searching" his pod. (*Id.*) "Immediately after," other inmates began yelling, "man

13   down," at which point Harris "ran into the dayroom and saw plaintiff on the floor . . . and . . .

14   activated his alarm for a medical emergency response." (*Id.*) Plaintiff was transferred to a hospital

15   and treated for his injuries. Dr. Tung recommended surgery. (*Id.* at 18.)

16        Plaintiff was eventually transferred to R.J. Donavan Correctional Facility (RJD), where he

17   was "immediately provided" "proper pain treatment . . . and . . . an ADA appliance" for his

18   disability. (*Id.* at 11-12.)

19   **III.    DISCUSSION**

20        The Court has screened Plaintiff's third amended complaint pursuant to 28 U.S.C. §

21   1915A(a) and found it states cognizable claims of deliberate indifference to serious medical needs

22   in violation of the Eighth Amendment. (Docs. 30, 36.) Plaintiff's operative claims are based on

23   the following sets of alleged facts:

24        **Claim 1:** Dr. Akabike failed to properly treat Plaintiff for his degenerative disc disease

25             and stenosis, including by refusing to update his medical file to reflect his condition and

26             by failing to provide him proper medication and accommodations, which resulted in

27             unnecessary pain and caused Plaintiff to fall twice while walking down the stairs.

28   ///

3

1   **Claim 2:** After Plaintiff fell the first time, Correctional Officers Ceja and Harris refused to

2   move Plaintiff to a lower-tier cell and forced him to again walk down the stairs, causing

3   him to fall the second time.

4   **Claim 3:** After Plaintiff fell the second time, Correctional Officer Ceja refused to activate

5   a medical emergency alarm.

6   Defendants move to dismiss the third amended complaint on the grounds that (1) Plaintiff

7   fails to plead a cognizable claim of deliberate indifference, and (2) Defendants are entitled to

8   qualified immunity. (Doc. 41 at 1.)

9   For the reasons set forth below, the Court finds that Plaintiff states cognizable claims with

10   respect to Claims 1 and 2 but fails to state a cognizable claim with respect to Claim 3. The Court

11   is unable to decide on the pleadings whether Defendants are entitled to qualified immunity due to

12   disputes of fac; thus, it denies without prejudice Defendants' motion to dismiss on qualified

13   immunity grounds.

14   **A.  Deliberate Indifference to Serious Medical Needs**

15   "Prison officials violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to

16   [a prisoner's] serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014)

17   (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is

18   manifested by prison doctors in their response to the prisoner's needs or by prison guards in

19   intentionally denying or delaying access to medical care. . ." *Estelle*, 429 U.S. at 104-05. "A

20   medical need is serious if failure to treat it will result in significant injury or the unnecessary and

21   wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotation marks and citations

22   omitted). "A prison official is deliberately indifferent to that need if he 'knows of and disregards

23   an excessive risk to inmate health.'" *Id.* at 1082 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

24   (1994)).

25   The test for deliberate indifference to medical needs is two-pronged and has objective and

26   subjective components. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). To establish

27   a deliberate-indifference claim, a prisoner must first "show a serious medical need by

28   demonstrating that failure to treat [the] prisoner's condition could result in further significant

4

injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

As to the first, objective prong, "[i]ndications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

As to the second, subjective prong, deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation marks and citation omitted). Deliberate indifference exists where a prison official "knows that [an] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing, "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation omitted). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

     i.  <u>Claim 1</u>

In his complaint, Plaintiff alleges he suffered from degenerative disc disease and stenosis, which caused him back pain and affected his ability to walk, stand, and sit for prolonged periods

1   of time. (Doc. 29 at 7-8.) These allegations satisfy the first, objective prong of a deliberate

2   indifference claim. *See Colwell*, 763 F.3d at 1066.

3          Defendants argue that Plaintiff fails to plead facts sufficient to satisfy the second,

4   subjective prong with respect to Dr. Akabike. (*See* Doc. 41 at 10-11). The Court disagrees.

5   Plaintiff alleges Dr. Akabike, after evaluating Plaintiff, refused to provide him proper pain

6   medication or accommodations or to update his medical chart to reflect his condition. (Doc. 29 at

7   7-9.) Plaintiff further alleges that, after his condition caused him to fall twice while walking down

8   the stairs, Dr. Akabike continued to deny him proper treatment or accommodations or to update

9   his chart. (*Id.* at 10-11.) As soon as Plaintiff was transferred R.J. Donovan Correctional Facility,

10  prison officials allegedly provided him proper treatment and accommodations. (*Id.* at 11-12.)

11  Although, as Defendants point out (Doc. 41 at 10-11), a mere misdiagnosis or difference in

12  medical opinion does not establish deliberate indifference, *Estelle*, 429 U.S. at 106, *Toguchi*, 391

13  F.3d at 1059-60, Plaintiff's allegation regarding the difference in treatment at SATF and RJD at

14  least supports his claim that Dr. Akabike was deliberately indifferent to his needs.

15         According to Defendants, "Plaintiff only alleges a single instance when he was actually

16  seen by Dr. Akabike before the alleged falls," which occurred on May 11, 2017, and that this one

17  evaluation is insufficient to show that the doctor was deliberately indifferent. (Doc. 41 at 11.) As

18  an initial matter, Plaintiff also alleges that he "repeatedly informed" Dr. Akabike of his condition

19  and the inaccuracy of his medical file, such as in writing. (Doc. 29 at 7-9.) Thus, liberally

20  construing his allegations, Plaintiff alleges that Dr. Akabike's actions or inactions were in

21  response to more than just the May 11, 2017 visit.

22         Second, Defendants point to no authority that establishes that a medical professional

23  cannot be deliberately indifferent based on a single encounter. Clearly, if a person were to show

24  up at an emergency room with an obviously life-threatening gunshot wound, and a doctor were to

25  refuse to treat the person despite seeing the obvious injury, that one encounter would be enough

26  to establish, at a minimum, deliberate indifference. In other words, whether the single encounter

27  between Plaintiff and Dr. Akabike on May 11, 2017, is enough to establish deliberate indifference

28  is a fact-specific matter. Plaintiff alleges that Dr. Akabike refused to update his medical file and

1  to properly treat his condition, despite knowing of that condition after evaluating him on May 11,

2  2017. This is a factual contention that the Court must accept as true on a motion to dismiss. *See*

3  *Iqbal*, 556 U.S. at 678.

4      Defendants also argue that Plaintiff fails to show that he was harmed as a result of Dr.

5  Akabike's actions. (Doc. 41 at 12-13.) The Court again disagrees. Plaintiff alleges that Dr.

6  Akabike's failure to properly treat his condition resulted in the unnecessary infliction of pain.

7  (Doc. 29 at 11-12.) In addition, Plaintiff alleges the doctor's refusal to update his medical file

8  prevented him from being moved to a lower-tier cell. (*Id.* at 7, 10, 12-13.) As a result of his top-

9  tier housing, Plaintiff was forced to walk down stairs, causing him to fall twice on June 28, 2017.

10  (*Id.* at 10, 12-13.) These allegations are sufficient to establish a causal connection between Dr.

11  Akabike's actions or inactions and the harm he suffered.[1]

12      When liberally construed and viewed in the light most favorable to Plaintiff, Plaintiff's

13  factual allegations establish a deliberate indifference claim with respect to Claim 1 that is

14  plausible on its face. *See Iqbal*, 556 U.S. at 678; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

15  998 (9th Cir. 2010); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

16      ii.  <u>Claim 2</u>

17      In his complaint, Plaintiff alleges Correctional Officers Ceja and Harris knew about his

18  medical condition and disability because they regularly saw him struggling to walk and being

19  assisted by his cellmate. (Doc. 29 at 14.) Plaintiff further alleges that, after he fell the first time,

20  his cellmate informed the officers about the fall and requested that he and Plaintiff be moved to a

21  lower-tier cell. (*Id.* at 14-15.)  The officers, however, responded by moving only the cellmate.

22  (*Id.*) Plaintiff alleges the officers then forced him to walk down the stairs from his upper-tier cell,

23  which caused him to fall the second time. (*Id.* at 15, 17.) Based on these allegations, the Court

24  finds that Plaintiff states cognizable claims of deliberate indifference against Defendants Ceja and

25  Harris.

26  ─────────────────

27  [1] Defendants also argue that Plaintiff fails to state a claim because he does not explicitly plead that, had Dr. Akabike updated his medical chart as he requested, it "would have ensured that he . . . received a lower tier bed assignment." (Doc. 41 at 12.) This argument is splitting hairs, at least when analyzing the allegations of a *pro se* plaintiff at the pleading stage. When liberally construed, Plaintiff's allegations are sufficient to establish the requisite causal

28  connection.

1    Defendants argue that Plaintiff fails to satisfy the first, objective prong of a deliberate

2    indifference claim with respect to Claim 2. (Doc. 41 at 7-8.) The Court does not agree. To satisfy

3    the objective prong, Plaintiff need only show that he had a serious medical condition and that,

4    because of that condition, he faced a substantial risk of serious harm by being housed in an upper-

5    tier cell. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012). Plaintiff alleges he has

6    degenerative disc disease and stenosis, which made it difficult for him to walk and caused him to

7    fall while walking down the stairs. Courts have frequently found that moving an inmate to a

8    housing assignment inconsistent with his medical needs can form the basis of a deliberate

9    indifference claim. *See, e.g.*, *id.*; *Binns v. Asuncion*, No. 2:16-cv-05481-DSF-SHK, 2020 WL

10   4032288, at *8 (C.D. Cal. 2020), *report and recommendation adopted*, 2020 WL 4060164 (C.D.

11   Cal. 2020).

12   With respect to the second prong, Defendants argue that Plaintiff's allegations are

13   conclusory and "amount to nothing more than bare assertions about what Defendants Harris and

14   Ceja 'should have known.'" (Doc. 41 at 8-9.) However, as explained above, Plaintiff alleges the

15   defendants knew about his disability because they regularly saw him struggling to walk and being

16   assisted by his cellmate, and because his cellmate informed them that he had fallen while walking

17   down the stairs. Plaintiff's contention that Defendants knew about his disability, then, is not

18   conclusory—it is supported by specific factual allegations that, if proven, provide circumstantial

19   evidence of their knowledge. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003)

20   ("deliberate indifference . . . may be shown by circumstantial evidence when the facts are

21   sufficient to demonstrate that a defendant actually knew of a risk of harm"). Defendants' implied

22   contention that it would have been improbable for the officers to "have observed [Plaintiff]

23   walking a particular way among . . . hundreds of inmates" is, itself, a factual contention. While it

24   may undermine the probability or believability of Plaintiff's factual allegations, it does not turn

25   those allegations into conclusory statements.

26   Defendants also contend that they are not liable for failing to move Plaintiff to a lower-tier

27   cell because they lacked the official authority to do so. (Doc. 41 at 9.) Defendants point to the

28   CDCR Operations Manual, which provides that only a correctional lieutenant or sergeant or

someone with a higher classification may authorize a housing assignment change. (*Id.*) Defendants' argument is belied by Plaintiff's contention that, upon receiving a cell-change request from Plaintiff's cellmate, Defendants moved the cellmate, but not Plaintiff, to a lower-tier cell. (Doc. 29 at 14-16.) In other words, Defendants' official authority is beside the point if they had the practical ability to move Plaintiff to a lower cell or to otherwise mitigate his risk of serious harm. *See McDonald v. Yates*, No. 1:09-cv-00730-LJO-SKO, 2012 WL 6514658, at *7 (E.D. Cal. 2012) ("even if [the d]efendants did not have the final authority to order or approve a bed move, they were still required to take reasonable action once . . . placed on notice that [the p]laintiff had a medical need for a lower bunk"), *report and recommendation adopted*, 2013 WL 238904 (E.D. Cal. 2013).

Lastly, Defendants contend that, "[a]s noted by the Court in its [screening order] . . . , Defendants Harris and Ceja relied on a doctor's diagnosis . . . , thereby evidencing the reasonableness of their conduct." (Doc. 41 at 9.) However, in its order, the Court did not find that Ceja and Harris did, in fact, rely on a doctor's diagnosis. Rather, the Court stated, "Plaintiff's allegation that Dr. Akabike never updated his medical file to reflect his disability runs counter to his [deliberate indifference] claim" against the officers, because "if prison guards rely on a doctor's diagnosis in making a housing assignment, such reliance is evidence that the officers did not act unreasonably." (Doc. 30 at 8.) From Plaintiff's complaint, though, it is unclear whether Defendants actually relied on Dr. Akabike's diagnosis or whether, more generally, they acted reasonably in response to Plaintiff's first fall. The Court finds that these are factual matters that it is unable to decide on a motion to dismiss.

When liberally construing Plaintiff's allegations, and specifically considering his allegations that (1) Officers Ceja and Harris personally witnessed his inability to walk properly and (2) were informed of his first fall, yet (3) refused to move him to a lower-tier bunk and (4) forced him to again walk downstairs, the Court finds that Plaintiff states deliberate indifference claims against the officers that are plausible on their face. *See Iqbal*, 556 U.S. at 678; *Daniels-Hall*, 629 F.3d at 998; *Hebbe*, 627 F.3d at 342).

///

9

1           iii.   Claim 3

2           As explained above, in the medical context, the second prong of a deliberate indifference

3   claim "requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible

4   medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation

5   omitted). In his complaint, Plaintiff alleges that after he fell down the stairs the second time,

6   Officer Ceja "looked at [him] on the floor[,] . . . stated . . . that [he] was 'faking,'" and refused to

7   call for medical assistance. (Doc. 1 at 17.) This allegation shows a purposeful act or failure to

8   respond to Plaintiff's pain or possible medical need.

9           Defendants argue that Plaintiff fails to show that he was harmed as a result of Ceja's

10  alleged (mis)conduct. (*See* Doc. 41 at 10.) The Court agrees. Plaintiff alleges that "immediately

11  after" Ceja waved him off, other inmates yelled "man down," then Officer Harris "activated his

12  alarm for a medical emergency response." (Doc. 29 at 17.) Plaintiff was then transferred to a

13  hospital for further treatment. (*Id.*) Plaintiff fails to show that the mere moments in between

14  Ceja's inaction and Harris's action caused him any additional injury.

15          In his opposition, Plaintiff does not meaningfully dispute Defendants' contention that he

16  fails to show that he was harmed as a result of Ceja's alleged refusal to activate his medical

17  emergency alarm, when Harris activated his alarm immediately thereafter. Instead, Plaintiff

18  focuses on Ceja's alleged misconduct itself. (*See, e.g.*, Doc. 46 at 5.) But as explained above, case

19  law clearly requires a plaintiff to show that he was harmed as a result of a defendant's deliberate

20  indifference. Because Plaintiff does not make this showing with respect to Claim 3, he fails to

21  establish a cognizable deliberate indifference claim with respect to Claim 3. *See Shapley v.*

22  *Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("mere delay" of

23  treatment, without harm resulting therefrom, "is insufficient to state a claim of deliberate medical

24  indifference").

25      **B.  Qualified Immunity**

26          A defendant is entitled to "qualified immunity if one of two conditions are met. First,

27  immunity will be applied if the plaintiff has not 'alleged' . . . facts that would make out a

28  constitutional violation. . . Second, even if the Plaintiff has shown such a violation, the defendant

1   is entitled to qualified immunity if the constitutional right allegedly violated was not '"clearly

2   established" at the time of defendant's alleged misconduct.'" *A.D. v. California Highway Patrol*,

3   712 F.3d 446, 453-54 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

4   District courts have "discretion in deciding which of the[se] two prongs . . . should be addressed

5   first." *Pearson*, 555 U.S. at 236.

6        Regarding the second prong, "[f]or a constitutional right to be clearly established, its

7   contours must be sufficiently clear that a reasonable official would understand that what he is

8   doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and

9   citation omitted). Courts "do not require a case directly on point, but existing precedent must have

10  placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731,

11  741 (2011) (citations omitted). "[A] plaintiff must prove that precedent on the books at the time

12  the officials acted would have made clear to [them] that [their actions] violated the Constitution."

13  *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (internal quotation marks and citation

14  omitted).

15        i.   <u>Claim 2</u>

16        As explained above, the Court finds that Plaintiff states cognizable deliberate indifference

17  claims against Officers Ceja and Harris for their alleged refusal to move Plaintiff to a lower bunk,

18  and forcing him to walk downstairs, after he fell the first time. Defendants contend that they are

19  entitled to qualified immunity for this alleged conduct because they "are unaware of any authority

20  that . . . deems it unreasonable for Harris and Ceja to rely on the judgment of the medical doctors

21  who had authored his medical records or who had released him back to his cell without any

22  medical accommodation after his alleged first fall." (Doc. 41 at 14.)

23        If medical doctors did, in fact, release Plaintiff back to his cell without any

24  accommodation after his first fall, Officers Ceja and Harris may be entitled to qualified immunity

25  for refusing to move Plaintiff to a lower-tier cell, particularly if they relied on the doctors'

26  evaluations in making that decision. *See Akhtar v. Mesa*, No. 2:09-cv-2733-MCE-AC, 2014 WL

27  6946142, at *12 (E.D. Cal. 2014) (correctional officer did not violate clearly established law by

28  moving an inmate to a housing assignment inconsistent with his medical needs, when the officer

1    "rel[ied] on the judgment of the medical doctors who had authored . . . the [inmate's] latest

2    [accommodation] chrono"), *report and recommendation adopted as modified*, 2015 WL

3    12752691 (E.D. Cal. 2015). However, it is unclear from the complaint whether Dr. Akabike or

4    another doctor evaluated Plaintiff after his first fall (but before his second fall) and explicitly

5    decided to release him back to his cell without any accommodation. Assuming a doctor did make

6    such a decision, it is also unclear whether Officers Ceja and Harris actually relied on that decision

7    in deciding not to move Plaintiff to a lower-tier cell and ordering him to walk downstairs.

8         Moreover, courts have found that, despite the lack of a valid medical chrono, the law is

9    "sufficiently clear that a reasonable officer, once placed on notice as to the existence of a medical

10   issue precluding . . .upper tier housing, would have known that he was required to take reasonable

11   measures to abate the risk of harm." *McDonald*, 2012 WL 6514658, at *9. It is unclear from the

12   complaint whether Defendants took *any* measures in response to allegedly being placed on notice

13   of Plaintiff's medical condition and first fall (besides moving his cellmate to a lower-tier cell).

14        The Court, therefore, is unable to decide the matter of qualified immunity without a more

15   developed factual record. Although, when liberally construing his allegations, the Court finds that

16   Plaintiff states cognizable claims against Officers Ceja and Harris, *see* Section III.A.2, *supra*, the

17   Court is unable to determine whether the officers are entitled to qualified immunity without

18   knowing, for example, whether they relied on a doctor's diagnosis or decision not to provide

19   Plaintiff any housing accommodation. *See Brown v. Grove*, 647 F. Supp. 2d 1178, 1183 (C.D.

20   Cal. 2009) ("fact-intensive issues pertinent to a qualified immunity defense, particularly whether

21   the defendant's conduct was reasonable, are better left to summary judgment") (citation omitted).

22   Therefore, the Court denies Defendants' motion to dismiss on qualified immunity grounds, with

23   the acknowledgement that Defendants may reraise the matter at a later stage.

24   **IV.    CONCLUSION AND RECOMMENDATIONS**

25        For the reasons set forth above, the Court finds that Plaintiff states cognizable claims of

26   deliberate indifference against Defendants with respect to Claims 1 and 2 but fails to state a

27   cognizable claim against Defendant Ceja with respect to Claim 3. Accordingly, the Court

28   RECOMMENDS that:

1.  Defendants' motion to dismiss Plaintiff's third amended complaint (Doc. 41) be GRANTED IN PART and DENIED IN PART, as specified below.

2.  Plaintiff's claim of deliberate indifference against Defendant Ceja for his alleged refusal to activate his medical emergency alarm (Claim 3) be DISMISSED; and,

3.  Plaintiff's remaining claims of deliberate indifference against Defendants (Claims 1 and 2) be allowed to proceed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __September 28, 2021__              _____ /s/ **Jennifer L. Thurston**
                                          CHIEF UNITED STATES MAGISTRATE JUDGE

13